**So Ordered.**

Dated: January 23rd, 2020



Whitman L. Holt
Bankruptcy Judge

*NOT FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Case No. 18-02970-WLH7 |
| DARRELL RIEL, | |
| Debtor. | |
| IAN IBBOTSON, | Adv. Proc. No. 18-80042-WLH |
| Plaintiff, | **MEMORANDUM DISPOSITION RESOLVING COMPETING MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| DARRELL RIEL, *et al.*, | **Related Docket Nos. 41, 42, 43, 44, 47, 48, 49, 50, 51, 52, 53, 54 & 55** |
| Defendants. | |

The Bankruptcy Code grants bankruptcy trustees an array of powers, exercise of which sometimes produces harsh results for those who did nothing wrong but failed to comply with a seemingly technical legal requirement. Among those powers is the ability to avoid certain pre-bankruptcy transfers and obligations using the "strong arm" powers in Bankruptcy Code section 544(a).

This dispute requires the court to define the reach of these powers. The conflict arises from competing motions seeking summary judgment regarding the discrete issue of whether notice of plaintiff Ibbotson's asserted interest in certain

**MEMORANDUM DISPOSITION RE:
COMPETING MOTIONS FOR
PARTIAL SUMMARY JUDGMENT**     Page 1

real property is sufficient to defeat the interests of a bona fide purchaser ("BFP") under Washington law and, therefore, withstand a bankruptcy trustee's challenge.

For the reasons discussed below, the court concludes that Ibbotson's asserted more-than-50% interest would not be enforceable against a BFP under Washington law and thus must also yield to the chapter 7 trustee's strong-arm powers under Bankruptcy Code section 544(a)(3). The court accordingly will in a separate order grant the trustee's motion for partial summary judgment, deny Ibbotson's motion for partial summary judgment, and schedule a further status conference.

## BACKGROUND AND PROCEDURAL POSTURE

Toward the end of 2007, plaintiff Ibbotson and debtor Riel agreed to purchase land located in Yakima County, Washington, and assorted other assets from Riel's father.[1] The transaction closed in January 2008 and included agreements that, along with other documents, generally set forth a 50/50 economic arrangement between Ibbotson and Riel as well as terms on which various payments were to be made to Riel's father.[2]

After Riel's father did not receive certain of the promised payments, the father acted to enforce his rights in a fashion that could have led to a forfeiture of much of Ibbotson's and Riel's interests in their enterprise, including by serving and apparently recording in August 2013 a *Notice of Intent to Forfeit Pursuant to Revised Code of Washington Chapter 61.30, as Amended* (the "Forfeiture Notice") in the Yakima County recording system.[3] To preserve the property, Ibbotson personally paid all of the amounts owed to Riel's father, including original principal, interest, penalties, fees, and other costs.[4] As a result, Ibbotson contributed funds far exceeding the equal portion contemplated by the parties.[5]

Because Ibbotson paid Riel's father in full, the father in September 2014 signed and had recorded a *Statutory Warranty Fulfillment Deed* (the "Deed") in the

---

[1] *See* ECF No. 43 ¶¶ 4-7; ECF No. 52 ¶¶ 4-7.

[2] *See* ECF No. 43 ¶¶ 10-23; ECF No. 52 ¶¶ 10-23.

[3] *See* ECF No. 43 ¶¶ 24-25; ECF No. 44 Ex. 12; ECF No. 52 ¶¶ 24-25.

[4] *See* ECF No. 43 ¶ 26; ECF No. 52 ¶ 26.

[5] If Ibbotson had counterfactually not satisfied the debts owed Riel's father, the real estate might not have been property of the estate to any degree. The equities broadly may be on Ibbotson's side, even if the law is not.

**MEMORANDUM DISPOSITION RE:**
**COMPETING MOTIONS FOR**
**PARTIAL SUMMARY JUDGMENT** Page 2

Yakima County recording system.[6] The grantees in the Deed are "DARRELL E. RIEL, a single person, and IAN R. IBBOTSON, a married man as his sole and separate property, as tenants in common." Other than identifying the two as "tenants in common," the Deed is silent about Riel's and Ibbotson's respective interests.

Undoubtedly upset about his disproportionate contribution and subsequent developments in the parties' relationship, Ibbotson sued Riel in Washington state court in July 2017, asserting claims for breach of fiduciary duty and an accounting (the "State Court Action").[7] Ibbotson did not record a *lis pendens* or other notice under RCW 4.28.320 in the Yakima County recording system, but the State Court Action was a matter of public record that could be located by a diligent search.[8]

Riel filed a chapter 7 bankruptcy petition in this court on October 29, 2018, and John D. Munding was duly appointed as the successor chapter 7 trustee.[9] In December 2018, Ibbotson removed the State Court Action to bankruptcy court.[10] Ibbotson later filed an amended complaint joining the chapter 7 trustee and others to this adversary proceeding, which the trustee and others answered (and, in the case of the trustee, counterclaimed against Ibbotson, which Ibbotson then answered).[11] These pleadings, among other things, frame a dispute about the extent of Ibbotson's ownership interest in the property conveyed by Riel's father.

In October 2019, Ibbotson moved for partial summary judgment, seeking a determination that Ibbotson's ownership interest is proportional to the amount he paid Riel's father.[12] The chapter 7 trustee opposed Ibbotson's motion and cross-moved for partial summary judgment, seeking a determination that, as a result of his powers under Bankruptcy Code section 544(a)(3),[13] Ibbotson and Riel's

---

[6] *See* ECF No. 43 ¶ 27; ECF No. 44 Ex. 14; ECF No. 49 Ex. A; ECF No. 52 ¶ 27.

[7] *See* ECF No. 1 Ex. 1.

[8] *See, e.g.*, ECF No. 49 Ex. B ¶ 42 (exclusion in title report).

[9] *See* Bankr. Case No. 18-02970-WLH7 at ECF Nos. 1, 10.

[10] *See* ECF No. 1.

[11] *See* ECF Nos. 18, 35, 38, 45.

[12] ECF No. 41.

[13] The parties' dispute about the scope of section 544(a)(3) presupposes that Ibbotson otherwise has an interest in the property beyond the parties' initial 50/50 allocation. Without that embedded premise, there would be no Ibbotson interest to defeat using section 544(a)(3) and the dispute may not be ripe for this court's resolution.

**MEMORANDUM DISPOSITION RE:
COMPETING MOTIONS FOR
PARTIAL SUMMARY JUDGMENT** Page 3

bankruptcy estate each own an equal 50% interest in the real property.[14] After the completion of briefing, the court heard oral argument regarding these dueling motions on January 10, 2020, and the matter is now ready for decision.

## DISCUSSION

### *Jurisdiction & Power*

The court has subject matter jurisdiction regarding this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) & 157(a) and LCivR 83.5(a) (E.D. Wash.). This court is a proper venue for this litigation as a result of Ibbotson's removal under 28 U.S.C. § 1452(a). The parties' dispute regarding the application of Bankruptcy Code section 544(a)(3) is statutorily "core"[15] and "the action at issue stems from the bankruptcy itself."[16] In any case, Ibbotson and the chapter 7 trustee have both expressly or implicitly consented to a final adjudication of the adversary proceeding by this bankruptcy court.[17] Accordingly, the court may properly exercise the judicial power necessary to finally decide this dispute.

### *Standard for Partial Summary Judgment*

Federal Rule of Civil Procedure 56, which applies here through Bankruptcy Rule 7056, allows a party to move for complete or partial summary judgment, which should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"The determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[18]

---

[14] ECF Nos. 47, 51.

[15] *See* 28 U.S.C. § 157(b)(2)(A) & (O); *see also, e.g.*, *Morgan v. Melissa Land Taylor Mgmt. Trust*, 2013 Bankr. LEXIS 408, at *20-21 (Bankr. N.D. Ala. Jan. 30, 2013). The fact that Bankruptcy Code section 544(a)(3) requires an analysis of Washington state law does not alter the "core" nature of the dispute. *See* 28 U.S.C. § 157(b)(3).

[16] *Stern v. Marshall*, 564 U.S. 462, 499 (2011).

[17] *See* ECF No. 1 at p. 2; ECF No. 18 ¶ 30; ECF No. 35 at p. 8 ¶ 3. *See generally Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947-48 (2015).

[18] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) (cleaned up).

Here, there is little, if any, dispute about the material facts. The parties basically agree about what happened before Riel's bankruptcy filing; they disagree about the legal consequences that flow from those prepetition events.

*Bankruptcy Trustee's Strong-Arm Powers*

Among the powers given to a chapter 7 trustee is the ability to defeat certain prepetition transfers and obligations using applicable nonbankruptcy law. As relevant here, the statute provides that:

> [t]he trustee shall have, as of the commencement of the case, and ***without regard to any knowledge of the trustee*** or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.[19]

This strong-arm power is a right conferred by federal law to advance the fair and equitable treatment of creditors in bankruptcy, including by cutting off "unperfected security interests, secret liens and undisclosed prepetition claims against the debtor's property as of the commencement of the case."[20] The trustee's status under section 544(a) is acquired by operation of law "as of the time when the petition in bankruptcy is filed."[21]

The plain text of section 544(a) makes the trustee's actual or subjective knowledge irrelevant, but "[a] trustee does not become a hypothetical bona fide purchaser if she has been put on constructive or inquiry notice" of a competing interest that would limit a BFP's rights under state law.[22] Put differently, if the record on the petition date contains materials that would preclude a BFP from taking free and clear of a given interest under state law, then the bankruptcy trustee similarly remains subject to that interest.

---

[19]   11 U.S.C. § 544(a)(3) (emphasis added).

[20]   5 COLLIER ON BANKRUPTCY ¶ 544.02[2] (16th ed. rev. 2019).

[21]   *See Lewis v. Manufacturers Nat'l Bank*, 364 U.S. 603, 607 (1961) (Douglas, J.).

[22]   *In re Professional Inv. Props.*, 955 F.2d 623, 627 (9th Cir. 1992) (applying Washington state law).

**MEMORANDUM DISPOSITION RE:**
**COMPETING MOTIONS FOR**
**PARTIAL SUMMARY JUDGMENT**       Page 5

## Washington Law

> As the Ninth Circuit Court of Appeals has explained:
> In Washington, a bona fide purchaser is defined as one who without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has paid the vendor a valuable consideration. Washington, which is a race-notice state, generally holds that a bona fide purchaser prevails over a prior transferee who has failed to record. Since the strong arm powers elevate the trustee to a level of a bona fide purchaser, a trustee without notice can generally avoid any unrecorded transfer of land in the State of Washington.[23]

This general rule is not absolute, however, as Washington law includes an inquiry or constructive notice principle applicable when "a purchaser has knowledge of information of facts which are sufficient to put an ordinarily prudent man upon inquiry, and the inquiry, if followed with reasonable diligence, would lead to the discovery of defects in the title or of equitable rights of others effecting the property in question."[24] When considering whether a person is a BFP, Washington courts thus "ask (1) whether the surrounding events created a duty of inquiry and, if so, (2) whether the purchaser satisfied that duty."[25]

In the particular context of a deed or agreement that vests property in multiple parties without specifically stating their proportional ownership, "it is presumed that they share equally."[26] This "presumption that tenants in common hold equal shares when the instrument under which they claim is silent in that regard, is subject to rebuttal," including when "purchasers of property are shown to have contributed unequally to the purchase price."[27] Although Washington law remains unsettled about the precise burden parties must meet to rebut various presumptions,[28] at a minimum the party seeking to defeat Washington's backdrop legal presumption of equal ownership must initially point to evidence sufficient to demonstrate unequal contributions that would support unequal ownership. And, in

---

[23] *Id.* (cleaned up).

[24] *See id.* (quoting Washington case law dating back to 1908).

[25] *Albice v. Premier Mortg. Servs. of Wash., Inc.*, 276 P.3d 1277, 1284 (Wash. 2012).

[26] *Cummings v. Anderson*, 614 P.2d 1283, 1287 (Wash. 1980) (en banc).

[27] *E.g.*, *Iredell v. Iredell*, 305 P.2d 805, 807 (Wash. 1957).

[28] *See Spivey v. City of Bellevue*, 389 P.3d 504, 511-14 (Wash. 2017) (discussing different approaches adopted by Washington courts and theorists regarding how legal presumptions are defeated).

**MEMORANDUM DISPOSITION RE:**
**COMPETING MOTIONS FOR**
**PARTIAL SUMMARY JUDGMENT**      Page 6

the case of a BFP (or a bankruptcy trustee standing in a BFP's shoes), giving effect to this presumption means that adequate rebuttal evidence must take a form that Washington courts would conclude gave constructive or inquiry notice to the BFP.

## FINDINGS & CONCLUSIONS

Ibbotson offers two theories why a purchaser would have constructive or inquiry notice under Washington law of Ibbotson's claimed unequal interest in the property.[29] The court discusses each theory in turn.

First, Ibbotson asserts that the Forfeiture Notice provides notice that there had been an issue regarding payment of Riel's father, which would provide notice sufficient to cause a potential purchaser to investigate the nature of the problem, which would in turn lead the purchaser to discover that Ibbotson had paid more than his share of the amount necessary to satisfy the debts owed to Riel's father.

The fatal defect with this theory is that the Forfeiture Notice predates the Deed, the content of which triggers Washington's default presumption of equal ownership. A purchaser who reviewed the Forfeiture Notice could conclude that there was some problem with Riel's father, but that same purchaser would also see the subsequent Deed suggesting the issue had been resolved in a manner that led to Ibbotson and Riel each taking a presumptive 50/50 ownership interest in the property. Put differently, there is nothing in the Forfeiture Notice, the Deed, or any other document recorded with Yakima County that would suggest anything had occurred that could rebut the legal presumption triggered by the plain text of the Deed. The court does not believe that a party reviewing these documents with an understanding of Washington law[30] would conclude that some second- or third-order review of extrinsic facts was necessary to determine the precise fashion in

---

[29] Ibbotson's briefing suggested a third theory whereby the chapter 7 trustee is precluded from challenging Ibbotson's claim of greater ownership because the trustee had not (yet) objected to a proof of claim filed by Ibbotson, which proof of claim asserted a security interest in the property. *See* ECF No. 55. This theory was jettisoned at oral argument, and rightfully so. First, the chapter 7 trustee had objected to the claim before the January 10, 2020 hearing, *see* Bankr. Case No. 18-02970-WLH7 at ECF No. 30, thereby depriving that claim of any preclusive effect that might otherwise exist. Second, chapter 7 cases impose no definitive deadline by which trustees must object to filed claims and – in contrast to the cases cited by Ibbotson in which individual debtors had benefited from, and hence were subject to the preclusive effect of, orders confirming their bankruptcy plans or granting them discharges – no order has been entered that would solidify the status of Ibbotson's proof of claim vis-à-vis the trustee. Third and finally, the court finds Ibbotson's proof of claim to be ambiguous regarding the precise nature of the interest asserted therein and therefore does not ascribe material weight to that proof of claim, either in favor of Ibbotson or (as the chapter 7 trustee urges) against Ibbotson.

[30] *See Maynard Inv. Co. v. McCann*, 465 P.2d 657, 662 (Wash. 1970) (explaining how "every person is presumed to know the law and is bound thereby").

**MEMORANDUM DISPOSITION RE:**
**COMPETING MOTIONS FOR**
**PARTIAL SUMMARY JUDGMENT** Page 7

which Riel's father's debt was satisfied. Rather, the documents would lead such a party to conclude that the matter had been resolved in a way that did not require any language in the Deed specifying an ownership allocation between Ibbotson and Riel, and hence Washington's presumption of co-ownership held firm and a BFP could still rely on that presumption. Because these surrounding events would not create a duty of inquiry, the court concludes that the Forfeiture Notice is simply too thin a reed on which to support Ibbotson's case against the chapter 7 trustee.

Second, Ibbotson argues that the pending State Court Action, as a matter of discoverable public record, would put a BFP on notice of Ibbotson's asserted unequal interest in the real property or at least Ibbotson's disagreements with Riel.

Although this second theory has some appeal, it has been rejected by the Washington Supreme Court. In *OneWest Bank, FSB v. Erickson*,[31] the court resolved a dispute between a reverse-mortgage lender (OneWest) and the mortgagor's daughter (Erickson). Among the issues raised was whether OneWest was a bona fide mortgagee (a status akin to a BFP) that defeated Erickson's asserted interest in the property.[32] Erickson's theories to combat OneWest's status included an argument based on the inclusion of statements about her interest in the property in public filings that were part of litigation in Idaho state court. The Washington Supreme Court rejected this argument in the following footnote:

> Erickson claims OneWest or its predecessor should be charged with constructive notice because the 2007 quitclaim deed and the 2008 court order conveying property to Erickson "were matters of public record before the Deed of trust was assigned to OneWest" ***because they were part of court proceedings*** and they predated OneWest's predecessor's October 2007 deed of trust. But matters of public record are distinguishable from the record chain of title for a particular parcel of real property recorded in the county where the property sits. The latter is sufficient to defeat bona fide purchaser status, ***but we do not necessarily expect subsequent purchasers to inquire into the former***. Erickson could have recorded her quitclaim

---

[31] 367 P.3d 1063 (Wash. 2016) (en banc).

[32] *See id.* at 1074-76.

**MEMORANDUM DISPOSITION RE:
COMPETING MOTIONS FOR
PARTIAL SUMMARY JUDGMENT**     Page 8

deed or a *lis pendens* noting the litigation in the county office if she wanted to provide notice of her interest in the property.[33]

The distinction the Washington Supreme Court draws between "matters of public record" and "the record chain of title" implicates the precise argument that Ibbotson makes before this court. Indeed, that distinction defeats Ibbotson's argument that a purchaser under Washington law would be charged with knowledge of something that was asserted in the State Court Action but not reflected in the Yakima County recording system.

Although this court would likely follow a decision by the Washington Supreme Court (the definitive expositor of Washington state law) regarding an issue of Washington state law in any event, it bears note that the conclusion reached in *OneWest Bank* comports entirely with the plain text of Washington's *lis pendens* statute. That statute allows various parties to file and thereby record a notice of any "action affecting title to real property" detailing "the names of the parties, the object of the action, and a description of the real property in that county affected thereby."[34] The statute further provides that, "[f]rom the **time of the filing only** shall the pendency of the action be constructive notice to a purchaser or encumbrancer of the property affected thereby."[35] The statutory text thus confirms the correctness of the Washington Supreme Court's conclusion that the pendency of a public lawsuit is simply not enough to provide constructive notice to a purchaser; such notice arises **only** after a recording has been made pursuant to RCW 4.28.320.[36] Because Ibbotson did not record or file a *lis pendens*, other notice, deed of trust or mortgage (to secure what effectively was a loan from Ibbotson to Riel), or anything else in the Yakima County recording system

---

[33] *Id.* at 1075 n.9 (emphasis added; citation omitted). *See also, e.g.*, *Biles-Coleman Lumber Co. v. Lesamiz*, 302 P.2d 198, 200 (Wash. 1956) (reciting principle that "a bona fide purchaser for value of real property may rely upon the record chain of title as shown in the office of the county auditor"); *Cunningham v. Norwegian Lutheran Church*, 184 P.2d 834, 836 (Wash. 1947) ("From the beginning, we have held without deviation that a bona fide purchaser of real property may rely upon the record title.").

[34] RCW 4.28.320.

[35] *Id.* (emphasis added).

[36] In *Professional Investment Properties*, the Ninth Circuit Court of Appeals noted that a similar Washington statute (RCW 4.28.325, regarding actions pending in federal district court rather than in state court) "does not suggest that [filing a *lis pendens*] is the exclusive method of providing constructive or inquiry notice" to the world. *See* 955 F.2d at 629. Although that may have been true regarding the involuntary bankruptcy petition at issue in *Professional Investment Properties*, the same conclusion does not obtain in this context because RCW 4.28.320 expressly states that filing a notice is the **only** way to provide notice of a pending state-court action that could affect the title to real property. As such, at least in this particular context, Washington law leaves no room for some other form of constructive notice of the State Court Action.

**MEMORANDUM DISPOSITION RE:**
**COMPETING MOTIONS FOR**
**PARTIAL SUMMARY JUDGMENT**     Page 9

regarding the State Court Action or his broader claim to own more than 50% of the real property,[37] Ibbotson is unable to demonstrate that his asserted interest would defeat a BFP under Washington law.

The court ultimately concludes that neither the Forfeiture Notice nor the pendency of the State Court Action (nor the two together) would provide constructive or inquiry notice under Washington law that Ibbotson asserted an interest in the half of the real property that otherwise belonged to Riel. Because Ibbotson's asserted greater interest would not be superior to the rights of a BFP under Washington state law, that greater interest is now avoidable by the chapter 7 trustee using his powers under Bankruptcy Code section 544(a)(3). Although this result may seem unfair to Ibbotson, it is the outcome required under the statutory scheme this court must apply.[38]

---

[37] Ibbotson has contended that filing a *lis pendens* or other notice was unnecessary because he was already "on title" and RCW 4.28.320 purportedly applies only to persons that are foreign to the as-recorded title. Ibbotson did not provide, nor did the court locate, any Washington case law considering this theory, but it is not supported by the text of the statute. Nothing in RCW 4.28.320 suggests there is an "already-on-title" exception to its notice requirements. Rather, the text sweeps generally to encompass any "action affecting title to real property," regardless whether the plaintiff or defendant may already be on title. Moreover, it seems consistent with the statutory purpose to require anyone who asserts an interest contrary to the current recorded title, even if that person is already on title in some respect, to file a notice informing a future BFP and the rest of the world of an asserted defect in or variance from the current title. In fact, a cotenant who otherwise would be presumed to own 50% of the property under Washington law may be among those best positioned to file something, whether under RCW 4.28.320 or just generally, providing express notice that the rebuttable presumption should not apply. Additionally, case law located by the court includes examples in which already "on title" parties filed *lis pendens* and these state-court decisions either state or presume that such an act was appropriate, which again cuts against the exception advocated by Ibbotson. *See generally, e.g.*, *Anderson & Middleton Lumber Co. v. Quinault Indian Nation*, 929 P.2d 379, 381 (Wash. 1996) (describing how the plaintiff in a quiet title and partition action, which was on title as owning certain percentage interests in the subject property as a tenant in common, had "filed and recorded a *lis pendens* to provide record notice of the action"); *Bernard v. Henderson*, 2005 Wash. App. LEXIS 2765, at *1-9 (Wash. Ct. App. Oct. 31, 2005) (explaining how parties to "a partition action with respect to real property owned as tenants in common" could appropriately file a *lis pendens*, even though they would already be on the title; further noting that "[f]ailing to record a *lis pendens* to give buyers notice of a partition action would be imprudent"). Finally, this court does not need to decide whether Ibbotson was required to elect a particular remedy in the State Court Action, but the court does conclude that if Ibbotson wanted to defeat the potential future interest of a BFP (or a trustee in bankruptcy) in the real property, then Ibbotson should have filed something with Yakima County to provide notice of his asserted interest – i.e., provided some form of notice that became part of "the record chain of title for a particular parcel of real property recorded in the county where the property sits." *OneWest Bank, FSB*, 367 P.3d at 1075 n.9.

[38] *See, e.g.*, *Tasker v. DHL Ret. Sav. Plan*, 621 F.3d 34, 43 (1st Cir. 2010) ("Subject to constitutional concerns not present here, courts must follow the path demarcated by Congress and the Executive Branch. Where, as here, the statute and [any] implementing regulations are clear, an inquiring court must follow their lead. No judge is free to disregard the law simply because he or she thinks that it would be fairer to do so in a given case."). Ibbotson is not left completely out in the cold insofar as he may yet have an allowable general unsecured claim against the bankruptcy estate arising from his disproportionate contribution to the enterprise with Riel, which unsecured claim will yield ratable distributions from any assets that the chapter 7 trustee makes available for unsecured creditors, including proceeds of the estate's 50% share of the underlying real property.

**MEMORANDUM DISPOSITION RE:**
**COMPETING MOTIONS FOR**
**PARTIAL SUMMARY JUDGMENT**     Page 10

This conclusion is bolstered by *Rose v. Gottlieb (In re Khalil)*.[39] Although an unpublished decision applying California law, *In re Khalil* involved a dispute remarkably similar to the one at issue here.[40] As in this case, the bankruptcy court held that a bankruptcy trustee's powers under section 544(a) defeated a cotenant's asserted but unrecorded 80% interest in property co-owned with the debtor. The bankruptcy appellate panel affirmed this holding.[41]

Ibbotson's efforts to distinguish *In re Khalil* are unavailing. First, the court does not believe there is a material difference between California and Washington law; both states have a rebuttable presumption that cotenants share equally if not otherwise specified in a deed and both have a generalized constructive or inquiry notice principle.[42] Even assuming Ibbotson is correct that Washington law uses a somewhat lower standard for when a BFP will be on constructive or inquiry notice than does California law, there is nothing in the record of this case satisfying that standard. Second, the court in *In re Khalil* did observe that there was nothing in the silent deed at issue "or in any other public document" that would provide notice of the plaintiff's asserted greater interest in the property,[43] but this language is ultimately not a basis for distinction insofar as the "other public documents" that do exist here are not ones that provide constructive notice under Washington law for the reasons discussed above. Finally, the conclusion reached by the two *In re Khalil* courts – and now by this court – about the superior rights of a BFP (or bankruptcy trustee) when a deed is silent regarding the owners' proportional interests and when there is nothing else providing legally sufficient inquiry notice is consistent with case law from several other jurisdictions.[44] Although the court's decision today is supported by several longstanding principles of Washington law, to the extent there is some gap in existing Washington law regarding a purchaser's rights in the context of a silent deed and the other surrounding circumstances

---

[39] 2015 Bankr. LEXIS 1608 (B.A.P. 9th Cir. May 11, 2015).

[40] *See id.* at *5-8.

[41] *See id.* at *15-24.

[42] *See id.* at *16-21.

[43] *See id.* at *21-22.

[44] *See Dubis v. Zarins (In re Teranis)*, 128 F.3d 469, 471-72 (7th Cir. 1997); *Morris v. Kasparek (In re Kasparek)*, 426 B.R. 332, 340-50 (B.A.P. 10th Cir. 2010); *Seaback v. Barth (In re Barth)*, 2008 Bankr. LEXIS 4656, at *24-32 (Bankr. E.D. Wis. Nov. 7, 2008).

**MEMORANDUM DISPOSITION RE:**
**COMPETING MOTIONS FOR**
**PARTIAL SUMMARY JUDGMENT**     Page 11

presented here, that gap is appropriately closed in a way that aligns and harmonizes the law across states.[45]

## SUMMATION

To wrap up, the court holds that Ibbotson's asserted more-than-50% interest in the property could not be maintained against a BFP under Washington law. As a result, the chapter 7 trustee can exercise his strong-arm powers under Bankruptcy Code section 544(a)(3) to void that interest for the benefit of Riel's bankruptcy estate. The court will issue an order effectuating this decision.

---

[45] *See, e.g.*, *Phelps v. Alameida*, 569 F.3d 1120, 1133-34 (9th Cir. 2009) (adopting a holding that will "harmonize our circuit's law with the law of nine of the eleven other circuits that have addressed this issue"); *Kitsap County Deputy Sheriffs' Guild v. Kitsap County*, 353 P.3d 188, 193 (Wash. 2015) (en banc) (finding guidance in "analogous case law from other states").

**MEMORANDUM DISPOSITION RE:**
**COMPETING MOTIONS FOR**
**PARTIAL SUMMARY JUDGMENT** Page 12